[No. C022579. Third Dist. Jan. 5, 1999.]

THE PEOPLE ex rel. STATE AIR RESOURCES BOARD, Plaintiff and Respondent, v.
RICHARD E. WILMSHURST et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I.B, I.C, II, III.E, IV, VI, VII, and VIII of the DISCUSSION.

1334

1336

1338

**COUNSEL**

Richard E. Wilmshurst, in pro. per., for Defendant and Appellant.

Pahl & Gosselin and Harold C. Wright for Defendant and Appellant Forty-Niner Sierra Resources, Inc.

Daniel E. Lungren, Attorney General, Charles W. Getz, Assistant Attorney General, Richard M. Thalhammer, Deputy Attorney General; Kathleen C. Walsh; and Kirk C. Oliver for Plaintiff and Respondent.

**OPINION**

**DAVIS, J.**—The Attorney General filed this action in September 1992 to recover civil penalties for violations of division 26, part 5, chapter 2, article 1.5 of the Health and Safety Code (§§ 43150-43156 [undesignated section references will be to this code]), based on transactions in 1990 and 1991

involving vehicles not certified to California air emissions standards.[1] The parties stipulated to the pertinent facts. The superior court bifurcated the trial into liability and penalty phases, which took place in February and September 1995. It imposed total penalties of $45,000 on each defendant.[2]

The defendants have raised 29 separately headed contentions challenging the viability of this action, several of the superior court's rulings during trial, the rejection of their defenses, the failure of the superior court judge to recuse himself between the trial phases, the amount of the penalties, the award of costs, the invalidity of a discovery sanction, and their entitlement to attorney's fees if they prevail. In the published portions of the discussion, we reject their arguments regarding the statute of limitations, their constitutional and other defenses to liability, and their challenges to the fines assessed against them. We reject the remainder of their contentions in the unpublished portion of the opinion. We shall thus affirm the judgment in all respects.

## FACTS

Division 26 of the Health and Safety Code (§ 39000 et seq.) is devoted to regulation of air quality. Part 5 of the division (§ 43000 et seq.) generally provides for regulation of air pollution from vehicles. Chapter 2 of part 5 (§ 43100 et seq.) is devoted to new motor vehicles. In article 1 of this chapter (§§ 43100-43108), the Legislature has authorized the Board to test and certify new motor vehicle models as complying with emissions standards developed by the Board. Article 1.5 of the chapter (§ 43150 et seq.) prohibits all conceivable transactions involving new motor vehicles which have not received the Board's certification pursuant to the chapter. For purposes of this article, it is "conclusively presumed" a vehicle with fewer than 7,500 odometer miles is "new." (§ 43156, subd. (a).)

Defendant 49er is a dealer in new motor vehicles located in Calaveras County. It is a franchisee of Subaru of America. At a 1990 dealer auction in

---

[1]Pursuant to section 43154, actions to recover civil penalties for transactions prohibited by sections 43151-43153 are brought by the Attorney General in the name of the People *on behalf of* the State Air Resources Board (Board); the Board itself is not a proper party. (*California Air Resources Bd.* v. *Hart* (1993) 21 Cal.App.4th 289, 300-301 [26 Cal.Rptr.2d 153].) Although the Attorney General properly alleged the present action was on behalf of the Board, the Board was also listed in the caption as an additional plaintiff (and its attorney listed as cocounsel). We have adjusted the caption accordingly by striking the Board as a party.

[2]The defendants are Forty-Niner Sierra Resources, Inc. (49er), and Richard E. Wilmshurst, its president and sole stockholder. Defendant Wilmshurst has filed his own appellate brief in propria persona. Except where necessary for clarity, we shall refer only generally to "defendants."

Utah, the defendants bought 50 or so 1990 Subaru Legacy vehicles which had previously been owned by rental car companies. They transported them to their place of business for resale to consumers. Nine of these Legacies had fewer than 7,500 odometer miles at time of purchase or resale. Although Subaru manufactured a model of the 1990 Legacy which the Board had certified as satisfying emissions standards, none of these vehicles was a California-certified model. Eight of the Legacies were sold to California residents in 1990 and 1991. In connection with these sales, the defendants determined at their licensed in-house facility that each vehicle satisfied the emissions test required as a condition of registration by the Department of Motor Vehicles (DMV). The defendants reported each sale to the DMV as involving a "used" vehicle. The DMV refused to issue registrations for the vehicles. Alerted to these transactions, the Board brought the present proceeding against the defendants.

## DISCUSSION

■ We note at the outset that at numerous points in their briefs the defendants premise their arguments on citations to a tentative statement of decision by the trial court. This document has no relevance on appeal. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 9, pp. 546-547.) We accordingly disregard any argument based thereon.

### I. *Challenges to maintaining this action*

#### A. *Statute of limitations*

■ The defendants assert a one-year statute of limitations applied to their violations. As the last of the transactions occurred in January 1991, they claim the September 1992 action was untimely.

To summarize their several arguments, the statute which expressly provides a three-year limitations period for "[a]n action commenced under Division 26 [§ 39000 et seq.]" (Code Civ. Proc., § 338, subd. (k))[3] (1) should be interpreted as only creating a delayed-accrual rule for these enforcement actions; (2) is a "general" statute which is superseded by the more "specific" statute which provides a one-year limitations period for "[a]n action upon a statute for a forfeiture or penalty to the people of this state" (Code Civ. Proc., § 340, subd. (2)); (3) cannot repeal the earlier-enacted one-year statute "by implication"; (4) cannot extend the one-year

---

[3]The statute also includes an accrual provision: "These causes of action shall not be deemed to have accrued until the discovery . . . of the facts constituting grounds for commencing the action . . . ." (Code Civ. Proc., § 338, subd. (k).)

statute without offending restrictions against retrospective legislation; and (5) creates a limitations period which is "unfair."

The first three claims involve errant interpretations of the relationship between the two limitations statutes. (1) The literal words of the three-year limitations statute apply to *any action brought under division 26*; no reasonable basis exists for giving effect only to the portion of the statute which creates a delayed-accrual rule for division 26 actions. (2) It is the one-year limitations statute which *generally* applies to all actions by the state for penalties or forfeitures, while it is the three-year statute which *specifically* applies to division 26 actions for penalties or fines. Therefore, even if the two statutes could possibly be considered in conflict, we would give effect to the three-year statute. (*Estate of Kramme* (1978) 20 Cal.3d 567, 576 [143 Cal.Rptr. 542, 573 P.2d 1369].) (3) The principle disfavoring repeals by *implication* (*People* v. *Leong Fook* (1928) 206 Cal. 64, 70 [273 P. 779]) is irrelevant in this context. The Legislature *expressly* recognized in 1990 that effective January 1, 1991, it was changing existing law in creating a specific statute of limitations for "actions maintained for the enforcement of provisions on air pollution." (5 Stats. 1990, Summary Dig., ch. 669, p. 236.)

The remaining two arguments are equally unavailing. The Legislature enacted the three-year statute within one year of all of the defendants' violations. This extension of the statute of limitations consequently does not run afoul of any of the prohibitions against retrospective legislation. (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, §§ 486, 494(a), pp. 675, 684-685.) As for the claim three years is excessively long, the defendants do not provide any authority for us to disregard the measured judgment of our coordinate branch of government in setting the limitations period for enforcement of division 26 actions.

### B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Trial rulings**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *Defenses to liability*

### A. *Federal preemption*

██ Under the preemption provision of the federal Clean Air Act (42 U.S.C. § 7401 et seq.), "No State . . . shall adopt or attempt to enforce any

---

*See footnote, *ante*, page 1332.

standard relating to the control of emissions from new motor vehicles . . . subject to this part. No State shall require certification . . . or any other approval relating to the control of emissions from any new motor vehicle . . . as condition precedent to the initial retail sale . . . of such motor vehicle . . . ." (*Id.*, § 7543(a).) Consequently, enforcement of emissions standards for *new* motor vehicles is the sole and exclusive prerogative of the federal government. (*Sims* v. *Fla. Dept. of Hwy. Safety & Motor Vehicles* (11th Cir. 1989) 862 F.2d 1449, 1455.)

However, the Clean Air Act has no concern with the regulation of vehicle emissions subsequent to the initial sale. (*Sims* v. *Fla Dept. of Hwy. Safety & Motor Vehicles, supra*, 862 F.2d at p. 1455, fn. 8.) Moreover, the Clean Air Act contains an express provision for waiving federal preemption of California's emissions standards: "The Administrator [of the· Environmental Protection Agency (EPA)] shall . . . waive application of this section to any State which has adopted standards . . . for the control of emissions from new motor vehicles . . . prior to March 30, 1966,[7] if the State determines that the . . . standards will be . . . at least as protective of public health and welfare as applicable Federal standards." (42 U.S.C. § 7543(b).) It is not disputed that pursuant to this provision, the EPA has granted California a waiver to allow it to enforce its own emissions standards as a condition precedent to the initial retail sale of new motor vehicles in this state.

Under the Clean Air Act, a motor vehicle is "new" until it is acquired by the first person who does not buy it for the purpose of resale (an "ultimate purchaser"). (42 U.S.C. § 7550(3), (5).) By contrast, California law (as previously noted) "conclusively" presumes for vehicles with fewer than 7,500 odometer miles that the person acquiring the vehicle does not have the status of ultimate purchaser (regardless of the actual intent of the purchase). (§ 43156, subd. (a).)[8]

The defendants argue the California definition of a new motor vehicle is incompatible with the federal definition and is therefore preempted. However, they have not established even a colorable preemption claim.[9]

The differing federal and state definitions create four categories of motor vehicles: 1) a motor vehicle never acquired by someone for a use other than

[7]"California is the only state which had adopted emissions control standards (other than crankcase emission standards) before March 30, 1966. It is thus the only state eligible for a waiver." (*Motor and Equipment Mfrs. Ass'n, Inc.* v. *E.P.A.* (D.C. Cir. 1979) 627 F.2d 1095, 1100, fn. 1 [201 App.D.C. 109].)

[8]Although not in issue and thus outside the scope of this opinion, there is a similar presumption for motor vehicles less than two years old. (§ 43156, subd. (b).)

[9]Because they are irrelevant to our conclusions, we disregard the trial exhibits which contain the opinions of administrative and legislative officers on the issue of preemption, and excerpts from the legislative history of section 43156, all of which play a part in the parties'

resale, with fewer than 7,500 miles; this would be "new" for purposes of *both* federal and state law; 2) a motor vehicle never acquired by someone for a use other than resale that nonetheless managed to accumulate 7,500 miles; this would be "new" under federal but not state law; 3) a motor vehicle which someone acquired without the intent of resale, with fewer than 7,500 miles; this would not be new for federal purposes but is deemed new under state law;[10] 4) a motor vehicle which someone acquired without the intent of resale, with more than 7,500 odometer miles; this is not new under either federal or state law.

It is only with respect to the first category that California's efforts to enforce its emissions standards on a "new" motor vehicle by means of the section 43156 presumption would involve preemption, because those are the only motor vehicles which are the subject of the Clean Air Act. However, the EPA has waived federal preemption. The effort by the defendants to posit a distinction between the authority of the EPA to waive federal emissions standards and its supposed lack of authority to waive the federal definition of an ultimate purchaser is irrelevant. The definition of a new motor vehicle has no import outside the enforcement of emissions standards. If California is authorized to apply its standards to new motor vehicles, it does not matter that the state's definition of new motor vehicles overlaps with coverage of the federal statute.

The second category does not involve preemption because these motor vehicles are not subject to state regulation. The defendants seem to argue the definition in section 43156 impermissibly exempts these vehicles from coverage under the Clean Air Act, but we cannot find any basis in law or logic for this suggestion.

The final two categories also do not involve preemption because the Clean Air Act, as noted, does not itself apply after the initial sale of a vehicle. The defendants do not provide any authority for inferring a congressional intent to preempt all state regulation of vehicle emissions after the initial sale. Therefore, if California wishes to regulate these vehicles, there is not any federal interest involved.[11]

---

arguments on this issue. We also deny the request for judicial notice of additional legislative history materials.

[10]As this is the category in which the defendants' vehicles fall, it is arguably the only category about which they have standing to raise the issue of preemption.

[11]Entangled in the preemption argument are complaints about a "conflict" between the definition of "new" motor vehicles created by section 43156 and the definition of new motor vehicles in the general provisions for division 26, which is identical to the federal definition. (§§ 39042, 39055.5.) As the general definition apply *except* where "the context requires otherwise" (§ 39010), there is no conflict.

## B. *Commerce clause*

■ The defendants argue the presumption in section 43156 violates the commerce clause as an impermissible burden on interstate commerce. (U.S. Const., art. I, § 8, cl. 3.) The short answer is that any limitation imposed by the commerce clause on the power of a state to act "may be lifted, as it has been here, by an expression of the 'unambiguous intent' of Congress." (*New York* v. *United States* (1992) 505 U.S. 144, 171 [112 S.Ct. 2408, 2426, 120 L.Ed.2d 120]; accord, *Merrion* v. *Jicarilla Apache Tribe* (1982) 455 U.S. 130, 154 [102 S.Ct. 894, 910, 71 L.Ed.2d 21, 40].) The preemption waiver provisions of 42 United States Code section 7543(b) demonstrate an intent by Congress to grant California the broadest possible discretion in adopting and enforcing standards for the control of emission from new motor vehicles. (*Motor and Equipment Mfrs. Ass'n, Inc.* v. *E.P.A., supra,* 627 F.2d at p. 1128.) "The history . . . of the California waiver provision . . . indicates that Congress intended the State to continue and expand its pioneering efforts at adopting and enforcing motor vehicle emission standards different from and in large measure *more advanced* than the corresponding federal program . . . ." (*Id.* at pp. 1110-1111, italics added.) This intent extends to California's emissions program as a whole. (*Id.* at p. 1110.) In light of this express intent of Congress to allow California to forge emissions standards at variance with the rest of the United States, the defendants do not have a tenable argument based on the commerce clause.

## C. *Equal protection*

■ Citing absolutely no authority, but using language evocative of challenges based on the constitutional guarantee of equal protection under the law (U.S. Const., 14th Amend.), the defendants argue section 43156 is arbitrary in its selection of 7,500 miles as the dividing line between categories of vehicles because there is no technological basis for that cutoff point. They conclude, "clearly the statute has been applied in a random and capricious manner."

■ The enactments of our coordinate branch of government are imbued with a presumption of constitutionality. (8 Witkin, Summary of Cal. Law, *supra,* Constitutional Law, § 601, p. 54.) In the absence of a suspect classification or a restriction on a fundamental interest, we will sustain a statute's classification if it bears a rational relationship to a legitimate state purpose. (*Id.,* § 602, p. 56.) We may sustain a statute if we can conceive of any reasonable state of facts which justifies the classification. (*McGowan* v.

*Maryland* (1961) 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399].)

■ As the Board correctly maintains, California could not effectively enforce its standards for emissions from new motor vehicles without a mileage cutoff point that is sufficiently high to discourage people from purchasing motor vehicles out of state which are not subject to the certification process and driving them back to California. It is beside the point that a particular uncertified car might nonetheless satisfy California standards; the sheer number of vehicles registered in California renders ludicrous any suggestion the Legislature must make allowances for individual cases. As for the defendants' claim there is nothing to distinguish cars with 7,499 or 7,501 miles, it has been discredited for almost half a century: "It is also urged that the statute is unreasonable and discriminatory because under it one who discharges an air contaminant only slightly below the prescribed limit . . . is exempt from the prohibition even though if he continues his operation long enough he will discharge more contaminant . . . than one who continues for only a short time . . . . But the drawing of such a line is very largely a matter of legislative discretion, the exercise of which will not be reversed by the courts unless abused. . . . '[T]he line must be drawn somewhere or there can be no classification and the courts have recognized that if the classification is reasonable in its over-all operation it is not to be stricken down because of its application to a particular case that may lie just inside its borders.' " (*People* v. *International Steel Corp.* (1951) 102 Cal.App.2d Supp. 935, 939-940 [226 P.2d 587].)

### D. *Due process/estoppel*

■ Under a heading invoking the protections of due process against fundamental unfairness, the defendants argue the application of section 43156 to used motor vehicles with fewer than 7,500 odometer miles "is obscured by its placement within [a c]hapter . . . dealing with new motor vehicles. There is no reference to § 43156 in any statute, rule or regulation dealing with used motor vehicles in either the Health & Safety Code or the Vehicle Code." They therefore claim the Board should be estopped from penalizing them.

In essence, this argument amounts to putting the wolf of ignorance of the law in the sheep's clothing of notice. "The intentional doing of an act expressly prohibited by statute constitutes the offense denounced by the law regardless of good motive or ignorance of the criminal character of the act." (*People* v. *Byers* (1979) 90 Cal.App.3d 140, 150 [153 Cal.Rptr. 249]; accord, 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 218, pp.

251-252.) That a particular defendant might not have the research skills to find an applicable statute has never been and never will be a valid excuse for failing to comply with it.[12] Nor can they premise their ignorance of the law on opinions purportedly issued by the Legislative Counsel; it does not offend traditional notions of fair play and substantial justice to apply the true meaning of a statute regardless of a defendant's claimed reliance on mistaken opinions which do not have the weight of a ruling of a court of law. (*People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 476 [106 Cal.Rptr. 519, 82 A.L.R.3d 804].)

As for their claim of estoppel, "We previously have recognized that this doctrine ordinarily will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice *and when the result will not defeat a strong public policy.*" (*Hughes* v. *Board of Architectural Examiners* (1998) 17 Cal.4th 763, 793 [72 Cal.Rptr.2d 624, 952 P.2d 641], italics added.) The state's strong public policy in protecting air quality precludes application of estoppel here. More importantly, by rejecting the defense of a good faith belief, the trial court's ruling necessarily precludes any claim of reliance necessary for estoppel. (*Ibid.*) This argument consequently fails.

### E. *Good faith belief**

. . . . . . . . . . . . . . . . . . . . . . . . . .

### F. *Certification v. smog check*

In chapter 2 of part 5 of division 26, the Board is authorized to develop emissions standards for new vehicles and procedures for certifying they meet these standards. (§§ 43100-43108.) These include surveillance during the assembly line process at the factory. (§§ 43202, 43210.) Transactions involving new motor vehicles which have not been certified pursuant to this process are prohibited by sections 43150-43156.

In chapter 5 of part 5 of division 26 (§ 44000 et seq.), the Legislature has provided for the biennial inspection and maintenance of emission control devices in *all* vehicles "powered by internal combustion engines" (the

---

[12]Although accessibility of the definition is immaterial, we note the general definition in division 26 of a "used" motor vehicle is simply a negative, i.e., "any motor vehicle which is not a new motor vehicle" (§ 39058), so presumably it would be incumbent upon one curious about the regulation of emissions from used vehicles (chapter 3 of part 5, commencing with section 43600) to be concerned with the provisions in chapter 2 regulating new motor vehicles.

*See footnote, *ante*, page 1332.

"smog-check" program), requiring all motor vehicles to obtain certificates that their emissions are in compliance with standards developed by the Board for *this* chapter. (§§ 44011, 44013.) Vehicle Code sections 4000.1 and 4000.2 direct the DMV to enforce this requirement by making a valid certificate of compliance a condition of the registration of any vehicle.

 Without any authority whatsoever, the defendants argue these two programs for regulating the emissions from motor vehicles should be considered parallel regulatory schemes, so that motor vehicles which the Board has not certified at the factory for sale in California pursuant to chapter 2 can nonetheless be sold if they individually satisfy the emissions standards enforced as part of the DMV's inspection program in chapter 5. This premise resurfaces some 20 pages later in one of their briefs as part of a 2-sentence claim (again unsupported by any authority) that sections 43150-43156 are fundamentally unfair and thus violate due process because they "conflict" with the smog-check program.

As found by the superior court (and based on substantial evidence at trial), the standards for certification of cars for sale in California are more exacting and test for a broader range of pollutants than the standards for the smog-check program. Moreover, as this is ultimately a question of legislative intent, these arguments by the defendants fatally founder upon section 44015.5, which explicitly precludes "any new motor vehicle . . . which is not certified by the [Board]" from receiving a smog-check certificate. The defendants' sole cogent response to this statute is a claim its effective date is subsequent to the events at issue and is therefore irrelevant. The effective date of the statute does not belie the import of the statute—the Legislature does not consider the programs to be equivalent. We therefore reject these claims on the merits.[13]

### G. *Insufficient evidence of emissions violations*

 The defendants claim there is no evidence in the record that the emission control equipment of their uncertified vehicles is any different than the equipment in certified vehicles. Even if true (and the Board points to evidence at trial disputing this claim), the defendants do not apprehend the irrelevance of this fortuity. The vehicles are nonetheless uncertified and thus transacting in them is unlawful. The defendants do not provide any authority permitting us to gloss the express prohibition against transacting in vehicles not "certified pursuant to this chapter" (§§ 43151-43153) by inferring a

---

[13]To the extent there lurks a renewal of their "good faith" defense in these arguments, it is foreclosed by the superior court's conclusion they knew full well the illegality of their acts.

proviso "or which have uncertified equipment which happens to perform up to California air-emissions standards." As we have stated earlier, the sheer magnitude of vehicles in California means we should defer to the Legislature's choice not to engage in case-specific determinations of the adequacy of a particular vehicle's emissions system.

The defendants reformulate this premise in a different part of their brief, arguing there was no evidence the subject vehicles emitted pollutants in excess of California standards, and thus the Board failed to prove what is in their view an essential element of its cause of action. They base this claim on an ipse dixit conception of California law being standard based, in contrast to equipment-based requirements of federal law. The argument fails because sections 43151-43153 prohibit transactions involving vehicles lacking the required *certification*, not vehicles which do not meet the standards which underlie the certification. We are not free to depart from the express wording of the statutes. We thus reject this argument.

### IV. *Disqualification motion*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### V. *Challenges to assessed penalty*

### A. *Fining both defendants individually*

In its statement of decision, the trial court concluded defendant Wilmshurst could be held individually liable for the violations along with defendant 49er, his corporation. It cited *People* v. *Toomey* (1984) 157 Cal.App.3d 1, 15 [203 Cal.Rptr. 642], as authority that corporate agents have individual liability for their own actions even when taken on behalf of the corporation, and that the responsible managing agent of a corporation can have individual liability for the violations of strict liability "public welfare" regulations by others in furtherance of the corporation's normal course of business. (Accord, *People* v. *Conway* (1974) 42 Cal.App.3d 875, 885-886 [117 Cal.Rptr. 251]; 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Introduction To Crimes, §§ 94, 95, pp. 109, 110.)

The defendants argue here that while *Toomey* may be authority for finding both of them *liable* (accord, *People* v. *International Steel Corp.*, *supra*, 102 Cal.App.2d at pp. Supp. 937, 942 [evidence sufficient to support liability of both president and corporation]; see *United States* v. *Park* (1975) 421 U.S. 658, 670 [95 S.Ct. 1903, 1910-1911, 44 L.Ed.2d 489, 499-500] [discussing

---

\*See footnote, *ante*, page 1332.

general principle under federal purity laws that both agent and corporation can be liable for criminal act]), it does not address the separate issue of whether a court can *fine* both defendants. They assert the exaction of a fine from each of them amounts to a "double" punishment which is "openly unconstitutional." They do not, however, provide any authority which precludes fining each of them. We decline to supply it. Each of the defendants has independent legal existence; regardless of the fact defendant Wilmshurst may "be" defendant 49er, the trial court did not find any basis to disregard the corporate entity. If both may be liable for the violations, then each must suffer the consequences of the violations.

### B. *Eighth Amendment*

The defendants contend the amount of penalties violates the excessive-fines clause of the federal Constitution. (U.S. Const., 8th Amend.)

In *Austin* v. *United States* (1993) 509 U.S. 602 [113 S.Ct. 2801, 125 L.Ed.2d 488], the Supreme Court stated there was nothing in the history of the Eighth Amendment which indicated its limitation to criminal prosecutions. (*Id.* at p. 608 [113 S.Ct. at pp. 2804-2805].) "[T]he question is not . . . whether [a fine] . . . is civil or criminal, but rather whether it is punishment." (*Id.* at p. 610 [113 S.Ct. at p. 2806].) Even assuming a fine serves *some* remedial purpose, it will be considered punishment if it *also* serves either retributive or deterrent purposes. (*Id.* at p. 621 [113 S.Ct. at p. 2812].)

*Austin* declined to articulate a test for determining whether a fine is excessive. Although a number of *forfeiture* cases have articulated a multifactor analysis of proportionality to be followed by a trial court (e.g., *United States* v. *Bajakajian* (1998) 524 U.S. 321, __ [118 S.Ct. 2028, 2036-2038, 141 L.Ed.2d 314, 329-331]; *U.S.* v. *Alexander* (8th Cir. 1994) 32 F.3d 1231, 1235-1237), the constitutionality of a *fine* is determined by a simpler test. "Proportionality is likely to be the most important issue in a forfeiture case, since the claimant-defendant is able to pay by forfeiting the disputed asset. In imposing a fine, on the other hand, ability to pay becomes a critical factor. But the [Sentencing] Guidelines mandate that this factor be considered . . . and if the sentencing court complies with these provisions, any constitutional ability-to-pay limitation will necessarily be met." (*U.S.* v. *Hines* (8th Cir. 1996) 88 F.3d 661, 664.) The defendants' concern with the relationship between the amount of the fines and nature of their offenses or the amounts of fines imposed in other cases is consequently irrelevant; it is their ability to pay which is the constitutional lodestar.

Here, the trial court found both defendants had the financial resources and ability to pay the per-car penalty of $5,000. As a result, this fine did not violate the Eighth Amendment.

## C. *Failure to relate penalties to demonstrated damages*

In a variation on their earlier theme, the defendants argue the amount of the fine must be based on the degree to which the subject vehicles polluted the air, rather than deterrence (as measured by their ability to pay). Claiming there was no evidence any of the vehicles had emissions in excess of those tolerated under the law, the defendants argue the Board is not entitled to *any* penalty assessment.

In addition to disgorging illicit gains and obtaining recompense, a civil penalty also has the purpose of deterring future misconduct. (*State of California* v. *City & County of San Francisco* (1979) 94 Cal.App.3d 522, 531 [156 Cal.Rptr. 542]; *People* v. *Bestline Products, Inc.* (1976) 61 Cal.App.3d 879, 924 [132 Cal.Rptr. 767].) Regulatory statutes would have little deterrent effect if violators could be penalized only where a plaintiff demonstrated quantifiable damages. (*State of California* v. *City & County of San Francisco, supra*, 94 Cal.App.3d at p. 531.) Further, "A penalty statute presupposes that its violation produces damages *beyond that which is compensable*." (*Ibid.*, italics added.) The burden of proving that actual damages are less than the liquidated maximum provided in a penalty statute lies with a defendant, and in the absence of evidence in mitigation a court is free to assess the full amount. (*Id.* at pp. 531-532.)

The defendants appear to believe that simply because they were prepared to demonstrate that their uncertified vehicles *might* not emit pollution in excess of California standards, this would have been sufficient evidence that the actual damage from transacting in uncertified vehicles is negligible. This is not the limit of the damages they have caused, however. They inconvenienced the purchasers of the vehicles; they caused the DMV to incur costs in enforcing the certification requirement for registration; and they have caused the Board to incur no end of enforcement costs. All these are damages borne by the taxpaying citizens of this state as a result of the defendants' decision to flout the proscriptions of the Health and Safety Code. The defendants also ignore the extent to which the amount of penalty relates to the amount of profit they realized in the wrongful transactions.

Their argument that damage must be paramount to deterrence in penalty setting once again raises the untenable spectre of forcing the Board in every individual case to prove the amount of emissions stemming from a particular vehicle, an enforcement scheme the Legislature has eschewed. Having violated the Legislature's carefully crafted strategy for minimizing the pollution effects of mobile sources in interstate commerce, it is a sufficient basis for the penalty that they be deterred from ever doing so again. Thus, the court

did not err in failing to consider the defendants' mitigating evidence of possibly permissible emissions from the subject vehicles, and as a result was entitled to award the maximum penalty per violation.

## VI.-VIII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Sims, J., concurred.

A petition for a rehearing was denied February 1, 1999, and appellants' petition for review by the Supreme Court was denied April 14, 1999.

---

*See footnote, *ante*, page 1332.