Filed 10/29/15  Solano v. Beavex CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAVIER SOLANO et al., | |
| Plaintiffs and Appellants, | G050187 |
| v. | (Super. Ct. No. 30-2011-00488995) |
| BEAVEX, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed.

Jose Garay; Pope, Berger & Williams, A. Mark Pope; Williams Iagmin and Jon R. Williams for Plaintiffs and Appellants.

McGuireWoods and Sabrina A. Beldner for Defendant and Respondent.

\*          \*          \*

Plaintiffs Javier Solano and Marco Teruel appeal from the trial court's order denying their motion for class certification against defendant BeavEx, Inc. They contend the court's final order denying class certification is facially invalid because it provides no analysis or reasoning. We disagree.

We also reject plaintiffs' argument that the court improperly analyzed the ascertainability requirement for class certification. As a result, we need not discuss plaintiffs' additional contention, on which the majority of their opening brief focuses, that the court erroneously utilized the common law test of employment as discussed in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 [principal test is right to control work details with the right to discharge the worker without cause being the strongest evidence] rather than alternative definitions for employee status set forth *Martinez v. Combs* (2010) 49 Cal.4th 35, 64 (*Martinez*) ["To employ, then, under the IWC's [Industrial Wage Commission] definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship"]. The California Supreme Court in *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, pages 530-531 (*Ayala*) had requested supplemental briefing on *Martinez*'s relevance, if any, to the question of employee versus independent contractor status but ultimately declined to decide the issue because the parties had proceeded solely under the common law test. We decline as well. The order is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

Defendant is a company that provides same-day delivery of parcels by way of drivers that it classifies as independent contractors. Plaintiffs work for defendant as such independent contractor drivers.

2

Drivers bid on routes and can negotiate the price to be paid for each one. Defendant provides them no formal training and pays them "per job" as opposed to by the hour or the week. There are no set "hours of work." The contract with defendant allows drivers to work for competing companies and does not require them to personally deliver the packages themselves. Rather, drivers may use third parties such as subcontractors, employees, and substitute or back-up drivers, whom the assigned drivers are responsible for paying. Defendant does not directly pay the subcontractors, employees or substitute drivers or take deductions from their pay. Nor does it maintain records of the routes serviced by the assigned driver's subcontractors, employees, or back-up drivers. Defendant's records show only that the route was completed, not who completed it.

Many drivers working for defendant, including plaintiffs, are also incorporated or operate as a separate state-registered business entity. Plaintiff Solano has a business license for his own courier company, named Solano Courier. Once or twice a week, he regularly has his wife drive the routes he accepted from defendant so he could also work for Pizza Hut. Defendant paid Solano, and Solano was responsible for paying his wife but did not do so "because she is [his] wife and [they] just reported it . . . in the taxes."

Plaintiff Teruel also owns and operates a registered, licensed courier business called Teruel Courier. He utilized another driver for his routes only once for a three week period while recovering from hernia surgery. Defendant paid Teruel and Teruel paid the driver.

Drivers may also arrange for another driver "already contracted to" defendant to be the back-up driver. In that situation, the assigned driver may either pay that back-up driver himself or herself or arrange for defendant to pay the back-up driver directly.

3

Plaintiffs sued defendant in July 2011. Their operative second amended complaint asserted, on behalf of the putative class members, causes of action for failure to reimburse business expenses, illegal deduction from wages, unfair business practices, and recovery of civil penalties for Labor Code violations. Plaintiffs alleged they and the putative class members were misclassified as independent contractors when they were in fact employees entitled to the protections of Industrial Welfare Commission (IWC) Wage Order No. 9 (Cal. Code Regs., tit. 8, § 11090) and the Labor Code. Although initially removed to federal district court, the case was remanded to the trial court.

Five years earlier, a similar putative class action was filed against defendant and removed to the federal district court. (*Spencer v. BeavEx., Inc.* (S.D. Cal. 2006, No. 05-CV-1501 WQH (WMc) 2006 WL 6500597 (*Spencer*).) That action made the same substantive claims and sought the same substantive relief. (Cf. *id.* at p. *1 [alleging defendant misclassified the plaintiffs as independent contractors as opposed to employees and failed "to reimburse for business expenses such as the use of personal vehicles and cell phones"] with operative complaint [defendant "failed to reimburse Plaintiffs and other Class Members for the use of their personal vehicles or for . . . cellular phones"].)

In *Spencer*, *supra,* WL 6500597 the original proposed class was: "All persons classified as independent contractors who have worked for BeavEx, Inc. in the State of California between June 20, 2001 and the present time using their personal vehicles with Gross Vehicle Weight Ratings of less than 10,000 lbs. to pick up and deliver documents, packages, parcels, merchandise, and other shipments for BeavEx customers." (*Id.* at p. *5.) This definition was modified in the reply brief to exclude persons who: "1) Were not affiliated as an independent contractor driver with a third party administrator, such as NICA or CMS; [¶] 2) Provided more than 51% of their services to BeavEx, Inc. by using their own employees or subcontractors; [¶] 3) Concurrently provided services to BeavEx, Inc. and to a similar company for which they were not paid by BeavEx; [¶] and 4) Concurrently provided services to BeavEx, Inc. and

4

to their own customers." (*Id*. at pp. *5-6.) The district court found "the proposed class to be unascertainable" because plaintiffs "failed to show that it is administratively feasible to ascertain which drivers actually drove less than 51% of their routes, so as to bring them within the modified proposed class definition." (*Id*. at p. *9.)

Similarly here, the definition of the proposed class changed several times. In their motion for class certification of about 900 persons, plaintiff proffered a class definition consisting of: "All natural persons who: (1) at any time from July 1, 2007 up to the time of judgment in this matter, performed work for BeavEx, Inc. in the State of California picking up and delivering packages and materials for BeavEx's customers on scheduled routes, (2) were classified as independent contractors by BeavEx, and (3) did not employ other drivers as subcontractors or employees to perform the work assigned to them by BeavEx, except for the *occasional substitute or back[-]up drivers*." (Italics added.)

Defendant opposed the motion in part on the ground the class definition was too speculative. In particular, defendant pointed out, "'Occasional' means 'occurring or appearing at irregular or infrequent intervals; occurring now and then.'"

In reply to defendant's argument, plaintiffs revised the proposed class definition to eliminate the words "*occasional substitute or*" such that the proposed class definition read: "All natural persons who (1) at any time from July 1, 2007 up to the time of judgment in this matter, performed work for BeavEx, Inc. in the State of California picking up and delivering packages and materials for BeavEx's customers on scheduled routes, (2) were classified as independent contractors by BeavEx, and (3) did not employ other drivers as subcontractors or employees to perform the work assigned to them by BeavEx, *except for back[-]up drivers*." (Italics added.) In doing so, plaintiffs acknowledged defendant's Courier Base 3.0 User Manual defined the word "backup" as "An occasional driver that serves as a backup for an IC [independent contractor] and is paid by the IC."

5

The trial court continued the hearing on the class certification motion to allow supplemental briefing as to this "entirely new class definition." In doing so it stated, "While a class definition may be modified at any stage of the litigation, this is a significant and dramatic change which alters the very class to be certified. Defendant has not had proper notice of that change nor a chance to respond."

Before the rescheduled hearing was held, the court issued a tentative ruling denying plaintiff's proposed class definition because it "suffer[ed] from the same defects and uncertainties as the first definition."

First, plaintiffs failed to explain the difference between back-up drivers, employees, and independent contractors or their relationship with each other. "What is a back[-]up driver? Can't it be an employee of the assigned driver? Can't it be an independent contractor who works for the assigned driver? What is the relationship between the back-up driver and those with a relationship with defendant if they are not employees or independent contractors? Unpaid volunteers? And can they be, or do they have to be paid and or covered by workers' compensation, etc.?"

Second, although plaintiffs removed the term "occasionally" from the first definition, they defined a back-up driver using the word occasionally, "once more creating the ambiguity."

Third, the class required each class member to determine what constitutes a back-up driver, whether it be "an employee, independent contractor or something else," which is "a fact specific and a totally vague concept to the drivers."

Fourth, as to Solano, questions remained as to whether his wife was his back-up driver, "whatever that is," his employee or an independent contractor, and the basis for determining whether "his regular use of a back-up driver" was occasional. By failing to provide answers, "[p]laintiffs have not even shown how Solano is part of the class."

6

The court ruled "plaintiffs' proposed class definition unworkable. The first, and now the second class definition proposed by plaintiffs is vague, is subjectively based and does not provide a means to ascertain the class members." A definition of a back-up driver "is necessary to remove from the definition from an ambiguous and subjective, self-identifying definition including words such as 'occasional,' 'subcontractor' and 'employee' which are ambiguous and fact specific to a particular driver."

In response to plaintiffs' argument "that all this goes to the issue of damages and therefore does not preclude class certification," the court asked, "How? An assigned driver is not in the class if he or she uses a 'back-up driver' more than occasionally. To be in the class, to be ascertainable, the assigned driver must use a back-up driver less than occasionally, and the back-up driver cannot be" the assigned driver's employee or independent contractor. "We don't even get to the issue of damages if an assigned driver is not in the class."

The court proposed what it believed "appears to be a solution" in the form of a new class definition: "*All natural persons who 1) at any time from July 1, 2007 up to the time of class certification in this matter performed work for BeavEx, in the State of California, picking up and delivering packages and materials for BeavEx's customers on scheduled routes, 2) were classified as independent contractors by BeavEx, and 3) **used only other drivers who were not paid by the assigned driver**.*" (Bold added.) The bolded phrase appears to arise from the court's understanding "the evidence is that the back-up drivers are paid, pursuant to defendant's policies, by the [d]efendant." The court stated that if plaintiffs agreed with this revised definition, it would certify such a class, as it believed "the remaining elements necessary for class classification [were] met."

At the hearing on the class certification motion, plaintiffs agreed to the court's proposed class definition. The court nevertheless believed its definition was "still a little sketchy," although it believed it "might work." Defense counsel argued it would not because the evidence showed "back[-]up drivers are in fact paid by the primary

7

driver." The court conceded it "did not pick up on that in" the declaration referenced by defense counsel. Defense counsel further reasoned: If the court's definition is adopted, neither of the plaintiffs would be members of the class because they do not meet the definition. On the times they used back-up drivers, defendant directly paid plaintiffs and plaintiffs paid the back-up drivers based on whatever arrangement they had. If the plaintiffs were not members of the class, there was no typicality and no evidence of numerosity.

In response, plaintiffs' counsel cited to deposition testimony from an operations manager that the back-up drivers were "all people who already had contracts with" defendant. He did not otherwise address the unascertainability of the class proposed by the court.

In his rebuttal, defense counsel explained that what plaintiffs' counsel was referring to was a third category that could be used by an assigned driver who required a back-up driver. The first, more formal category, consisted of subcontractors and employees. The second category was an informal back-up driver, which was used when the assigned driver did not "bid on a lot of routes," only "enough to keep themselves busy." Third, if that back-up driver is not available, the assigned driver may request a formal back-up driver from defendant, which is "called a substitute driver." The three categories are "subcontractors/employees, back[-]up drivers, and substitute drivers."

Following oral argument, the court took the matter under submission. It later denied the motion "having fully considered the arguments of all parties, both written and oral, as well as the evidence presented." The court gave no further explanation for its final ruling.

DISCUSSION

*1. Class Certification Principles and Appellate Review*

Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." To prevail on a motion to certify a class, "'The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] "In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'"'" (*Ayala*, 59 Cal.4th at pp. 529-530.)

"An order denying class certification or decertifying a class is appealable because it" has "the practical effect of disposing of the action between particular parties," and "effectively (but not technically) end[s] the case [by serving] as a 'death knell' to the action, constituting a final order in practical terms." (*Safaie v. Jacuzzi Whirlpool Bath, Inc.* (2011) 192 Cal.App.4th 1160, 1168.) We review the order denying class certification for an abuse of discretion. (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 (*Sav-on*).) "'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.'" (*Id.* at p. 326.) "[A] trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made.'" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.) "'Any valid pertinent reason stated will be sufficient to uphold the order.'" (*Id.* at p. 436.) We presume the existence

9

of all facts that can be reasonably deduced from the record in favor of the certification order. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.)

However, "'appellate review of orders denying class certification differs from ordinary appellate review. Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct. [Citation.] But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. [Citation.] We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling. [Citations.] [¶] We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported by substantial evidence.'" (*Mies v. Sephora U.S.A., Inc.* (2015) 234 Cal.App.4th 967, 980.)

*2. Validity of Court's Order*

Plaintiffs contend the trial court's final order is facially invalid because it provides no analysis or reasoning to allow for an adequate appellate review of its decision. We disagree.

"The trial court was not required to state its reasons in the order denying the motion. Instead, we review the entire record to determine whether the trial court's reasons were expressed. (See *Caro v. Procter & Gamble Co*. (1993) 18 Cal.App.4th 644, 656 ['Review of the entire record' disclosed the trial court's denial of a motion for class certification 'was based upon proper criteria and substantial evidence']; *National Solar Equipment Owners' Assn. v. Grumman Corp*. (1991) 235 Cal.App.3d 1273, 1281 ['The transcript of the hearing on the class certification motion leaves little doubt as to why the trial court felt the Association failed to show uniformity of the representations']; *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 829 ['A review of the transcript of the argument on the motion [for class certification] indicates the trial court was

10

concerned about "the sameness of the facts"']; *Stephens v. Montgomery Ward* (1987) 193 Cal.App.3d 411, 417-418 [findings of fact and conclusions of law may be requested but are not required as a matter of law].)" (*Knapp v. AT&T Wireless Services, Inc*. (2011) 195 Cal.App.4th 932, 939-940 (*Knapp*).)

*Knapp* concluded that the record before it "clearly shows the trial court denied the motion for class certification due to a lack of commonality of issues. After the parties' counsel argued the motion for class certification, the court stated: 'You're here today proposing that a class of plaintiffs should properly pursue this claim. And there really is substantial lack of evidence of the similarity, the commonal[i]ty that would extend through more than just the plaintiff. [¶] The absence of any further declarations, the absence of any other evidence, the absence of any suggestion of a uniform misunderstanding or uniform error in perceiving what the rights are leaves the court with no option, in my opinion, other than to deny this motion this morning for certification.'" (*Knapp*, *supra*, 195 Cal.App.4th at p. 940.)

Similarly, here, the record demonstrates the trial court denied the class certification motion due to plaintiffs' failure to define an ascertainable class. In its tentative ruling, the court indicated it would deny the motion to certify a class based on plaintiffs' proposed definition. But it stated it would certify a proposed class if plaintiffs agreed to the revised class definition proposed by the court. Other than a workable class definition, the court had concluded all of "the remaining elements necessary for class certification are met." The class was "sufficiently numerous," counsel demonstrated they had adequate background and experience, the named plaintiffs' claims were typical of the class and they had no conflict with other class members, and the class mechanism could be found to be superior to individual lawsuits. Additionally, the hearing on the class certification motion centered on the lack of a workable class definition. And plaintiffs' counsel himself acknowledged, "ascertainability . . . is what we're really talking about here."

11

Plaintiffs maintain that the court's final order "simply provides no window into why [it] suddenly changed its mind and decided to deny class certification" when it had stated in its tentative ruling that, with plaintiffs agreement, it would certify a class based on its own definition. But at the hearing on the motion, defense counsel pointed out that the court's definition, consisting of putative class members who "used only other drivers who were not paid by the assigned driver," was flawed for two main reasons. It assumed all back-up drivers were paid by defendant when in fact the record showed they were not. And it would eliminate the named plaintiffs as class representatives, because they both had testified defendant did not directly pay their respective back-up drivers. We can infer from the court's tentative ruling denying certification of plaintiffs' most recent proposed class definition and its final order summarily reversing its tentative decision to certify a class based on its own newly proposed definition, subject to plaintiffs' approval, that it had concluded its revised definition was unworkable. At that point, the ascertainability issue reverted back to the plaintiffs' proposed class definition, which the court had already rejected as being too vague and ambiguous.

### 3. *Failure to Define an Ascertainable Class*

"A class representative has the burden to define an ascertainable class. [Citations.] Although the representative is not required to identify individual class members [citation], he or she must describe the proposed class by specific and objective criteria. [Citation.] Ascertainability is achieved '"by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible . . . ."' [Citations.] Thus, '""[c]lass members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official [or business] records. [Citation.]

'"""Ascertainability . . . goes to the heart of the question of class certification,"' and '"requires a class definition that is precise, objective and presently

12

ascertainable.' . . .'" [Citation.] The purpose of the ascertainability requirement is to ensure it is possible "'to give adequate notice to class members'" and "'to determine after the litigation has concluded who is barred from relitigating.'" [Citation.] The ascertainability requirement is satisfied if 'the potential class members may be identified without unreasonable expense or time and given notice of the litigation, and the proposed class definition offers an objective means of identifying those persons who will be bound by the results of the litigation.'" (*Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 918-919 (*Sevidal*).)

Plaintiffs argue that the court would not have "stated [in its tentative ruling] it was prepared to certify a class if it also thought the class so defined was unascertainable." But as defendant points out, "appeals will not be decided based upon tentative decisions of trial courts." (*People ex rel. State Air Resources Bd. v. Wilmshurst* (1999) 68 Cal.App.4th 1332, 1341.) The record supports the conclusion that the ruling was a proper exercise of the court's authority to change its earlier interim ruling. (See *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1308.)

Plaintiffs further contend the court erred in rejecting their revised class definition. We disagree. The third prong of plaintiffs' revised definition concerned BeavEx drivers in California who "did not employ other drivers as subcontractors or employees to perform the work assigned to them by BeavEx, *except for back[-]up drivers*." (Italics added.) The court found this language problematic because the definition of a back-up driver was vague and ambiguous and made "plaintiffs' proposed class definition unworkable."

Plaintiffs do not address this aspect of the court's analysis but instead claim defendant "fails to distinguish between the necessity of establishing the existence of an ascertainable class, and the necessity of identifying the individual members of that class." They assert defendant's "records are adequate to identify those persons classified as

13

independent contractors who qualify for membership in the proposed class" and "nothing more is required" "[a]t this stage."

But as the trial court found, the proposed class is not sufficiently specific and objective. (*Sevidal*, *supra*, 189 Cal.App.4th at p. 918.) Plaintiffs acknowledged in their briefing that the term "back[-]up driver" as used in the revised class definition means "[a]n occasional driver that serves as a backup for an IC and is paid by the IC." The word "occasional" means "happening or done sometimes but not often" or "not happening or done in a regular or frequent way." (Merriam-Webster Online Dict.<http:www.merriam-webster.com/dictionary/occasional> [as of October 2015].) Without specific and objective guidelines, "occasional" is a vague and subjective term such that putative class members would be unable to meaningfully identify themselves as part of the putative class. Plaintiffs themselves recognized as much when they revised their class definition to eliminate the word "occasionally." The fact the term "backup" is defined by the same vague term necessarily dooms their revised class definition as well. Making plaintiffs' revised class definition more vague and ambiguous is their failure to explain the distinctions between subcontractors, employees, and back-up drivers.

Due to these ambiguities, the trial court found plaintiffs had not shown Solano was a putative class member. "How is his regular use of a back-up driver, whatever that is, occasional? Is his back-up driver an employee of his? Is his back-up driver an independent contractor?"

It is not until the appellants' reply brief that plaintiffs address the definition of a back-up driver. They claim "the status of back-up drivers should have been irrelevant to the ascertainability question" because "it was immaterial whether those back-up drivers were themselves subcontractors or employees. Instead, that proposed definition specifically excluded anyone from the class if they employed or used 'other drivers' to complete the work BeavEx assigned to them *except* if those 'other drivers' were the very back-up drivers which BeavEx required all Appellants to have." But that is

14

not the revised definition proposed by plaintiffs. Rather, the revised definition excluded anyone from the class who "employ[s] other drivers as subcontractors or employees to perform the work assigned to them by BeavEx, except for back[-]up drivers." Because the revised definition did not define back-up drivers as those "BeavEx require all Appellants to have," it is irrelevant whether defendant required its "drivers to have such back-up drivers" or that "the identity of any such back-up drivers was maintained within BeavEx's own records and 'CorrierBase' database." We decline to consider the issue further as it was raised for the first time in the reply brief and "'such consideration would deprive the respondent of an opportunity to counter the argument.'" (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1538.)

## DISPOSITION

The order denying plaintiffs' motion for class certification is affirmed. Defendant shall recover its costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

15