Filed 7/15/21

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>PETE PINEDO,<br><br>    Defendant and Appellant. | F078442<br><br>(Super. Ct. No. BF171497A)<br><br><br>**OPINION** |

-ooOoo-

        APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

        Jennifer Mouzis, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

                                        -ooOoo-

---

\*       Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, part II. of the Discussion, and the Disposition are certified for publication.

## INTRODUCTION

In 2018, defendant Pete Pinedo was arrested following a search of his residence by probation officers.[1]  He was charged with two felonies, possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 1)[2] and possession of ammunition by a felon (§ 30305, subd. (a)(1); count 2), and two misdemeanors, being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a); count 3) and possession of drug paraphernalia (Health & Saf. Code, § 11364; count 4).  The charging document also alleged he served two prior prison terms within the meaning of section 667.5, former subdivision (b).

Defendant was convicted by jury of all four counts.  In a bifurcated proceeding, the trial court found one prior prison term allegation true and the other allegation not true. The court also found that defendant violated parole in a separate case, Kern Superior Court case No. BV009363A.

The trial court sentenced defendant to the upper term of three years on count 1 plus one year for the prior prison term enhancement, for a total determinate term of four years in prison.  The court also imposed the upper term of three years on count 2, stayed under section 654; a concurrent one-year jail term on count 3; and a 180-day jail term on count 4, with credit for time served.  The court also ordered defendant to register as a narcotics offender under former Health and Safety Code section 11590 and imposed a minimum restitution fine of $300 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $300 under section 1202.45, suspended; a total court operations assessment of $160 under section 1465.8, subdivision (a)(1); a total court facilities assessment of $120 under Government Code section 70373, subdivision (a)(1);

---

[1]    We do not further summarize the facts underlying defendant's convictions, as they are not relevant to the claims he raises on appeal.

[2]    All further statutory references are to the Penal Code unless otherwise specified.

a total crime lab fee of $100 under Health and Safety Code section 11372.5 with a total penalty assessment of $310; and a drug program fee of $100 under Health and Safety Code section 11372.7 with a penalty assessment of $310.

Defendant raises four claims on appeal. He requests we conduct an independent review of the proceedings related to his *Pitchess*[3] motion and the trial court's determination that Deputy Probation Officer Ortiz's personnel file contained no information subject to disclosure, and he seeks relief from the fines, fees, and assessments imposed in this case without an ability-to-pay hearing, pursuant to the Court of Appeal's postsentencing decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). In supplemental briefing and in reliance on the *Estrada* presumption,[4] defendant requests relief from the narcotics offender registration requirement under Assembly Bill No. 1261 and the prior prison term enhancement under Senate Bill No. 136, both of which were enacted after he was sentenced.[5]

The People do not object to our independent review of the *Pitchess* proceedings and they concede defendant is entitled to have the prior prison term enhancement stricken under Senate Bill No. 136. However, they contend defendant is not entitled to relief from the narcotics offender registration requirement because repeal of former Health and Safety Code section 11590 under Assembly Bill No. 1261 operates prospectively rather than retroactively under *Estrada*, and they dispute his entitlement to relief from the fines, fees, and assessments imposed.

We find no error with respect to either the *Pitchess* proceedings or the trial court's determination that there is no discoverable information in Officer Ortiz's personnel file. However, we conclude that defendant is entitled to relief from the narcotics offender

---

[3]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[4]     *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

[5]     Assembly Bill No.1261 (2019–2020 Reg. Sess.) (Assembly Bill No. 1261 or Assem. Bill No. 1261) and Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill No. 136).

registration requirement and the prior prison term enhancement under Assembly Bill No. 1261 and Senate Bill No. 136; and in accordance with our recent decision in *People v. Montes* (2021) 59 Cal.App.5th 1107 (*Montes*), defendant is entitled to a remand so he may raise the issue of his ability to pay the fines, fees and assessments. The judgment is otherwise affirmed.

## DISCUSSION

### I. Independent Review of *Pitchess* Proceedings[*]

#### A. Background

Defendant filed a pretrial motion seeking discovery from the personnel file of Officer Ortiz, who was involved in the residential search that resulted in defendant's arrest. (Evid. Code, § 1043; *Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 41.) The prosecutor opposed the motion, but the trial court found good cause shown, conducted an in camera review of Officer Ortiz's personnel file, and determined there was no discoverable information. (*Association for Los Angeles Deputy Sheriffs v. Superior Court*, *supra*, at pp. 41–43.) Defendant now requests that we conduct an independent review of the *Pitchess* proceedings to ensure that the trial court complied with the procedural requirements set forth in *People v. Mooc* (2001) 26 Cal.4th 1216, 1228–1229, and did not abuse its discretion in denying discovery. The People do not oppose this request.

#### B. Legal Standard

Pursuant to Evidence Code section 1043, subdivision (b), "on a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both '"materiality" to the subject matter of the pending litigation and a "reasonable belief" that

---

[*] See footnote, *ante*, page 1.

4.

the agency has the type of information sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.] If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.] Subject to certain statutory exceptions and limitations [citation], 'the trial court should then disclose to the defendant "such information [that] is relevant to the subject matter involved in the pending litigation."'" (*People v. Gaines* (2009) 46 Cal.4th 172, 179; accord, *Association for Los Angeles Deputy Sheriffs v. Superior Court*, *supra*, 8 Cal.5th at pp. 40–43.)

On appeal, a defendant may request an independent review of the proceedings and the trial court's determination regarding the presence or absence of discoverable information. (*People v. Townsel* (2016) 63 Cal.4th 25, 67–68; *People v. Yearwood* (2013) 213 Cal.App.4th 161, 179–180.) "A trial court is afforded wide discretion in ruling on a motion for access to law enforcement personnel records. The decision will be reversed only on a showing of abuse of discretion." (*People v. Yearwood*, *supra*, at p. 180, citing *People v. Hughes* (2002) 27 Cal.4th 287, 330.)

### C. No Abuse of Discretion

We have independently reviewed the record and examined Officer Ortiz's personnel file. We find the trial court followed the proper procedure and created an adequate record of the in camera hearing. (*People v. Mooc*, *supra*, 26 Cal.4th at pp. 1228–1229; *People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 180.) We also find the trial court did not abuse its discretion in determining there is no information subject to disclosure. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

## II. Narcotics Offender Registration Requirement

### A. Background

Defendant was convicted in 2018 of being under the influence of a controlled substance, in violation of Health and Safety Code section 11550, subdivision (a), a

misdemeanor offense. As a result, he was subject to the narcotics offender registration requirement under former Health and Safety Code section 11590, which provided that a person convicted of certain qualifying offenses, including section 11550, "or any person who is discharged or paroled from a penal institution where he or she was confined because of the commission of any such offense, or any person who is convicted in any other state of any offense which, if committed or attempted in this state, would have been punishable as one or more of the [qualifying] offenses, shall within 30 days of his or her coming into any county or city, or city and county in which he or she resides or is temporarily domiciled for that length of time, register with the chief of police of the city in which he or she resides or the sheriff of the county if he or she resides in an unincorporated area." The failure to register in compliance with former Health and Safety Code section 11590 was punishable as a misdemeanor. (Former Health & Saf. Code, § 11594.)

Relevant to this appeal, effective January 1, 2020, Assembly Bill No. 1261 repealed former Health and Safety Code sections 11590 and 11594, and reenacted Health and Safety Code section 11594 to terminate the registration requirement. (Stats. 2019, ch. 580, §§ 1, 7–8, pp. 1, 3.)[6]

Defendant was sentenced on November 8, 2018, and the parties do not dispute that his conviction is not yet final. (*People v. Esquivel* (2021) 11 Cal.5th 671, 676 [2021 Cal. Lexis 4156, *7] (*Esquivel*); *People v. McKenzie* (2020) 9 Cal.5th 40, 46 (*McKenzie*).) In accordance with *Estrada*, defendant claims he is entitled to have the narcotics registration requirement stricken under Assembly Bill No. 1261.[7] The People disagree. They argue

---

[6]    In full, Assembly Bill No. 1261 repealed former Health and Safety Code sections 11590, 11592, 11593, 11594, and 11595; reenacted section 11594; and amended sections 11591 and 11591.5 pertaining to school employees and community college district teachers or instructors. (Stats. 2019, ch. 580, §§ 1–9, pp. 1–3.)

[7]    "While [former Health and Safety Code] section 11590 creates a duty on any person within its terms to comply with the registration provisions, it does not give rise to a concomitant

6.

that the "registration [requirement] is not a 'punishment,' and therefore is not subject to the retroactivity principles that apply to changes in the law which ameliorate punishment." Further, they contend that because "[n]othing in the legislative history of the repeal says one way or the other that it was intended to operate retroactively," "it should be read to apply prospectively under ordinary rules of construction."

We reject the People's position and conclude that defendant is entitled to relief from the registration requirement.

### B. Legal Standard

"We review de novo questions of statutory construction. [Citation.] In doing so, "'our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.'"' [Citation.] We begin with the text, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].' [Citation.] 'If no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls.'" (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.)

"Generally, statutes are presumed to apply only prospectively." (*People v. Frahs* (2020) 9 Cal.5th 618, 627 (*Frahs*), citing *People v. Lara* (2018) 4 Cal.5th 299, 307 (*Lara*); § 3.) "However, this presumption is a canon of statutory interpretation rather than a constitutional mandate. [Citation.] Accordingly, 'the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication.' [Citation.] Courts look to the Legislature's intent in order to determine if a law is meant to apply retroactively." (*Frahs*, *supra*, at p. 627, citing & quoting *Lara*, *supra*, at p. 307.)

---

duty on the part of the trial court to order a convicted person to comply with such registration provisions." (*In re Luisa Z.* (2000) 78 Cal.App.4th 978, 983 (*Luisa Z.*), citing *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1258.) In this instance, however, the trial court ordered defendant to register and the requirement is reflected in the abstract of judgment.

Pursuant to the California Supreme Court's decision in *Estrada*, "[n]ewly enacted legislation lessening criminal punishment or reducing criminal liability presumptively applies to all cases not yet final on appeal at the time of the legislation's effective date. (See *Estrada*, *supra*, 63 Cal.2d at pp. 744–745.) This presumption 'rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 852 (*Gentile*); accord, *Frahs*, *supra*, 9 Cal.5th at p. 624; *McKenzie*, *supra*, 9 Cal.5th at pp. 44–45; *Lara*, *supra*, 4 Cal.5th at pp. 307–308.) Relevant here, the *Estrada* presumption applies "'[a fortiorari] when criminal sanctions have been completely repealed before a criminal conviction becomes final.'" (*Gentile*, *supra*, at p. 854, quoting *People v. Rossi* (1976) 18 Cal.3d 295, 301; accord, *McKenzie*, *supra*, at p. 45; *People v. Collins* (1978) 21 Cal.3d 208, 212–213.)

### C.     Analysis

#### 1.     *Estrada* Presumption Applies

To support their position that defendant is not entitled to relief from the narcotics offender registration requirement under *Estrada*, the People cite *Alva*, *Castellanos*, and *Luisa Z.* for the proposition that the registration requirement is not punishment. (*In re Alva* (2004) 33 Cal.4th 254, 280 (*Alva*); *People v. Castellanos* (1999) 21 Cal.4th 785, 799, 805 (*Castellanos*); *Luisa Z.*, *supra*, 78 Cal.App.4th at p. 983.) However, those cases analyzed whether the relevant registration requirements constituted punishment within the confines of specific constitutional challenges, and we do not find them informative in this context.[8] (*Alva*, *supra*, at p. 290 [mandatory lifetime sex offender registration not

---

[8]     In *People v. Ruiz*, the California Supreme Court stated, "'[T]he traditional aims of punishment' are 'retribution or deterrence.' (*People v. Alford* (2007) 42 Cal.4th 749, 759.) However, a sanction does not constitute punishment merely because it has some 'deterrent or retributive *effect*.' (*In re Alva*[, *supra*,] 33 Cal.4th [at p.] 286 (*Alva*).) As we have explained in the context of applying the state and federal protections against cruel and/or unusual

punishment under cruel and/or unusual punishment clauses]; *Castellanos*, *supra*, at p. 796 [sex offender registration requirement not punishment for purposes of ex post facto analysis]; *Luisa Z.*, *supra*, at p. 983 [narcotics offender registration requirement not punishment for purposes of ex post facto analysis]; see *People v. Mosley* (2015) 60 Cal.4th 1044, 1062–1069 [sex offender residency restriction not a penalty for a crime within the meaning of *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*)]; *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888–889, fn. 10 [sex offender registration not punishment] (*Johnson*); *In re Jorge G.* (2004) 117 Cal.App.4th 931, 942–943 [gang registration requirement not punishment under *Apprendi*]; *People v. Bailey* (2002) 101 Cal.App.4th 238, 244 [gang registration requirement not punishment under ex post facto clause].)

Registration requirements are consequences of qualifying criminal convictions. (*People v. Picklesimer* (2010) 48 Cal.4th 330, 337–338 [sex offender registration requirement a collateral consequence for purposes of habeas jurisdiction]; *In re Stier* (2007) 152 Cal.App.4th 63, 82–83 [same]; *People v. McClellan* (1993) 6 Cal.4th 367, 375–376 [sex offender registration requirement a direct consequence for purposes of plea advisement]; *People v. Cotton* (1991) 230 Cal.App.3d 1072, 1084 [narcotics offender registration a direct consequence for purposes of plea advisement].) They are primarily regulatory, and, foundational to the People's argument, courts have concluded they do

punishments, 'a sanction designed and intended only to serve legitimate nonpenal objectives is not punishment … simply because it may burden, inconvenience, restrict, or deter *in fact*.' (*Ibid.*) On the other hand, that a given sanction may 'serve[] remedial purposes' does not establish that it is not 'punishment.' (*Austin v. United States* (1993) 509 U.S. 602, 610 [applying the 8th Amend.]; see *People ex rel. State Air Resources Bd. v. Wilmshurst* (1999) 68 Cal.App.4th 1332, 1350 ['Even assuming a fine serves *some* remedial purpose, it will be considered punishment [for purposes of applying the Eighth Amendment] if it *also* serves either retributive or deterrent purposes'].) In short, because 'sanctions frequently serve more than one purpose' (*Austin*, at p. 610) and have multiple effects, determining whether a given sanction constitutes 'punishment' is often difficult. (Cf. *People v. One 1950 Cadillac Club Coupe* (1955) 133 Cal.App.2d 311, 318 ['Practically no civil sanction is entirely remedial or entirely intended as a punishment'].)" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1107–1108.)

not constitute punishment as it is defined in the context of the cruel and/or unusual punishments clause, the ex post facto clause, or *Apprendi*. (E.g., *People v. Mosley*, *supra*, 60 Cal.4th at pp. 1062–1069; *Johnson*, *supra*, 60 Cal.4th at pp. 888–889, fn. 10; *Alva*, *supra*, at p. 290; *Castellanos*, *supra*, 21 Cal.4th at p. 796; *Luisa Z.*, *supra*, 78 Cal.App.4th at p. 983; *In re Jorge G.*, *supra*, 117 Cal.App.4th at pp. 942–943; *People v. Bailey*, *supra*, 101 Cal.App.4th at p. 244). In *Luisa Z.*, this court explained, "'Registration requirements generally are based on the assumption that persons convicted of certain offenses are more likely to repeat the crimes and that law enforcement's ability to prevent certain crimes and its ability to apprehend certain types of criminals will be improved if these repeat offenders' whereabouts are known. [Citation.] Accordingly, the Legislature has determined that sex offenders (Pen. Code, § 290), narcotics offenders ([former] Health & Saf. Code, § 11590) and arsonists (Pen. Code, § 457.1) are likely to repeat their offenses and therefore are subject to registration requirements.'" (*Luisa Z.*, *supra*, at p. 982; accord, *Johnson*, *supra*, at pp. 881–882; *Alva*, *supra*, at p. 265, fn. 5.) Subsequent to the decision in *Luisa Z.*, the Legislature also determined that defendants who commit gang related crimes should be subject to a registration requirement, to "help[] authorities monitor the location of those associating with gangs and thereby promote[] the goal of protecting the public from gang-related violent crime." (*People v. Bailey*, *supra*, at p. 244 [§ 186.30].)

The People do not address application of these authorities to the reduction or elimination of registration requirements in the context of *Estrada*, and the California Supreme Court has made clear that the *Estrada* presumption applies broadly to ameliorating benefits that flow from a change in the law. (*Esquivel*, *supra*, 11 Cal.5th at pp. 674–675 [2021 Cal. Lexis 4156, *3–6]; *Gentile*, *supra*, 10 Cal.5th at p. 852; *Frahs*,

*supra*, 9 Cal.5th at pp. 631–632.)[9]  Indeed, the primary focus is "whether a change in law is ameliorative" (*Esquivel*, *supra*, at pp. 675–676 [2021 Cal. Lexis 4156, *6–8]), and in *People v. Durbin* (1966) 64 Cal.2d 474, 479, the court applied the *Estrada* presumption outside the context of punishment, to a statutory amendment affecting bail forfeiture. The court explained, "What was there said with regard to an amendatory statute lessening criminal punishment equally applies to the reduction or elimination of civil penalties or forfeitures.  [¶]  It follows that *whether the forfeiture of bail is considered a civil penalty or as akin to criminal punishment*, the amendment taking from the trial court the discretion to declare forfeitures in cases as the present where the defendant is physically unable to appear must be applied to all cases not final at the time the amendment became effective." (*People v. Durbin*, *supra*, at p. 479, italics added.)

We did not locate any published decisions addressing the *Estrada* presumption in the context of Assembly Bill No. 1261, but a number of courts recently considered the issue in the context of Assembly Bill No. 1950,[10] which shortened the length of probation for many offenders, and concluded the *Estrada* rule applies.  (*People v. Lord* (2021) 64 Cal.App.5th 241, 245 (*Lord*); *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1072–1073, review granted June 30, 2021, S268787 (*Stewart*); *People v. Sims* (2021) 59 Cal.App.5th 943, 960–961 (*Sims*); *People v. Quinn* (2021) 59 Cal.App.5th 874, 882–883 (*Quinn*); *People v. Burton* (2020 58 Cal.App.5th Supp. 1, 14–16 (*Burton*).)  In several of those cases, the People argued, without success, that probation is not punishment and, therefore, we find the decisions informative.  (*Stewart*, *supra*, at p. 1071, review granted; *Sims*, *supra*, at p. 958; *Quinn*, *supra*, at pp. 882–883.)

---

**9**    Briefing was completed in this case prior to the California Supreme Court's decisions in *Esquivel*, *Gentile* and *Frahs*.

**10**    Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill No. 1950).

In *Burton*, although the People did not advance the argument that probation is not punishment, the court considered the issue, reasoning,

> "[A] '[g]rant of probation is, of course, qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither "punishment" [citation] nor a criminal "judgment" [citation]. Instead, courts deem probation an act of clemency in lieu of punishment [citations], and its primary purpose is rehabilitative in nature [citation].' [Citations.] [¶] But, although probation is not considered 'punishment' for specified purposes, the presumption of legislative intent in *Estrada* is not confined to only situations when jail and prison sentences are directly decreased due to new laws. A court may presume an intent to broadly apply laws even when they 'merely [make] a reduced punishment *possible*.' (*People v. Frahs*, *supra*, 9 Cal.5th at p. 629.) The Legislature in this instance clearly contemplated that reducing the amount of time probation can last was significantly beneficial to persons on probation, and that concomitantly, being on probation for longer than a year was detrimental 'rather than being rehabilitative.' As previously noted, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible' (*People v. Conley* [(2016)] 63 Cal.4th [646,] 657), not solely to changes that reduce 'punishment' as defined in contexts different than assessing whether *Estrada* is applicable." (*Burton*, *supra*, 58 Cal.App.5th Supp. at pp. 15–16.)

Subsequently, the Courts of Appeal in *Stewart*, *Sims*, and *Quinn* agreed and rejected the People's argument that probation is not punishment within the meaning of *Estrada*. (*Stewart*, *supra*, 62 Cal.App.5th at pp. 1072–1073, review granted; *Sims*, *supra*, 59 Cal.App.5th at pp. 959–961; *Quinn*, *supra*, 59 Cal.App.5th at p. 883; accord, *Lord*, *supra*, 64 Cal.App.5th at p. 245.) *Sims* explained, "[W]e do not believe the label affixed to probation—i.e., whether it is labeled punishment, rehabilitation, or some combination—is necessarily determinative of whether the *Estrada* presumption of retroactivity applies." (*Sims*, *supra*, at p. 959.) "[P]robation—though often deemed preferable to imprisonment from the perspective of a defendant—can be invasive, time-consuming, and restrictive for a probationer. A probationer 'is in constructive custody—he is under restraint.' [Citations.] Thus, '[w]hile probation is not technically a "punishment," being "'rehabilitative in nature'"' [citation], there is no question it is a

sanction that imposes significant restrictions on the civil liberties of a defendant.'
[Citations.] By limiting the maximum duration a probationer can be subject to such
restraint, Assembly Bill No. 1950 has a direct and significant ameliorative benefit for at
least some probationers who otherwise would be subject to additional months or years of
potentially onerous and intrusive probation conditions." (*Ibid.*, fn. omitted.)

In *Frahs*, the California Supreme Court explained in the context of
section 1001.36, a mental health diversion statute, that "the diversion statute provides a
possible benefit to a class of criminal defendants," and it is "the ameliorative nature of
the diversion program [that] places it squarely within the spirit of the *Estrada* rule."
(*Frahs*, *supra*, 9 Cal.5th at p. 631.) "[I]n order to rebut *Estrada*'s inference of
retroactivity concerning ameliorative statutes, the Legislature must 'demonstrate its
intention with sufficient clarity that a reviewing court can discern and effectuate it.'" (*Id.*
at p. 634.) More recently, in *Esquivel*, the court reiterated that the focus is on the
ameliorative nature of the change in the law and identified numerous contexts in which
*Estrada* was found applicable, including civil penalties or forfeitures. (*Esquivel*, *supra*,
11 Cal.5th at pp. 675–676 [2021 Cal. Lexis 4156, *6–7], citing *People v. Durbin*, *supra*,
64 Cal.2d at p. 479.)

The narcotics offender registration requirement was not as onerous as some
registration requirements, such as the lifetime sex offender registration requirement under
section 290, subdivision (d). However, for a five-year period (former Health & Saf.
Code, § 11594), the "registration requirement trigger[ed] associated statutory
obligations, such as maintaining current registration and furnishing fingerprints and
photographs to the Department of Justice. The registrant [was] subject to police inquiry
in the event crimes similar to those for which he or she … registered ha[d] occurred," and
"[a]nyone who fail[ed] to comply with the registration requirement [was] guilty of a
misdemeanor." (*Luisa Z*, *supra*, 78 Cal.App.4th at p. 983, citing former Health & Saf.
Code §§ 11590, 11594, subd. (a).) As previously stated, registration requirements serve a

13.

primarily regulatory function and are not considered punitive within the context of the Eighth Amendment or *Apprendi*. Nevertheless, they impose a burden, or a sanction, on an offender as a direct result of the offender's qualifying criminal conviction. (*People v. Mosley*, *supra*, 60 Cal.4th at pp. 1062, 1065; *Alva*, *supra*, 33 Cal.4th at pp. 268, 288–289, fn. 17; *Castellanos*, *supra*, 21 Cal.4th at p. 796; *People v. Martinez* (2004) 116 Cal.App.4th 753, 760.) Thus, whatever label is affixed to registration requirements, when properly viewed as a burdensome consequence of conviction, legislation that either reduces or eliminates that burden clearly constitutes an ameliorative change in the law to which the *Estrada* presumption applies. (See *People v. Durbin*, *supra*, 64 Cal.2d at p. 479.)

### 2. Assembly Bill No. 1261

Assembly Bill No. 1261 repealed Health and Safety Code sections 11590 and 11594, which codified the narcotics registration requirement, and reenacted section 11594, which now provides, "*All registration requirements set forth in this article, as it read on January 1, 2019, are terminated*. The statements, photographs, and fingerprints obtained pursuant to this section, as it read on January 1, 2019, are not open to inspection by the public or by any person other than a regularly employed peace or other law enforcement officer." (Italics added.) "The basis of [the California Supreme Court's] decision in *Estrada* was [a] quest for legislative intent" (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1045), and "'[the] effect of repealing a statute is "to obliterate it as completely from the records of the parliament as if it had never passed; and it must be considered as a law that never existed, except for the purpose of those actions which were commenced, prosecuted, and concluded while it was an existing law"'" (*People v. Rossi*, *supra*, 18 Cal.3d at p. 301, quoting *Spears v. County of Modoc* (1894) 101 Cal. 303, 305).

We discern no ambiguity in this instance, and the People neither address the substance of Assembly Bill No. 1261 nor endeavor to explain how defendant remains under a legal duty to register as a narcotics offender under these circumstances.

14.

(*Luisa Z.*, *supra*, 78 Cal.App.4th at p. 984.)  The elimination of the registration requirement through repeal is clear evidence of legislative intent (*People v. Collins*, *supra*, 21 Cal.3d at p. 213), and the People's position that defendant is not entitled to relief from the registration requirement in this case is inconsistent both with the *Estrada* presumption and, *Estrada* aside, with the plain language of the bill.

Although the plain language controls, given the People's argument that nothing in the legislative history indicates that retroactive application was intended, we point out that the express intent of Assembly Bill No. 1261 was to delete the narcotics "registration requirement and make conforming changes."  (Legis. Counsel's Dig., Assembly Bill No. 1261, ch. 580, p. 1.)  Moreover, as explained in an analysis of the bill:

> "*The philosophy behind the creation of the narcotics registry is inconsistent with the current approach to the treatment of drug offenses as demonstrated by recent voter-approved initiatives and legislative measures that have decreased the penalties for drug offenses and focused resources on providing treatment*.  In 2000, voters approved Proposition 36, which allows courts to divert non-violent defendants, probationers, and parolees charged with simple drug possession or drug use from incarceration into community-based substance abuse treatment programs.  More recently, the voters approved Proposition 47 in 2014, which reduced possession of heroin, methamphetamine, and other drugs to a misdemeanor, and, in 2016, the voters approved Proposition 64, which permits adults 21 years of age and over to possess and grow specified amounts of cannabis for recreational use.

> "In addition to these voter initiatives, the Legislature passed legislation in 2017 that limited the three-year prior-conviction sentence enhancement for people convicted of specified drug crimes, and established a pre-trial drug diversion program for many drug offenses.  [See SB 180 (Mitchell, Chapter 677, Statutes of 2017), and AB 208 (Eggman, Chapter 778, Statutes of 2017.)]  *Taking these drug reform measures into account, the rationale for continuing drug offender registration is questionable, especially considering that law enforcement has other methods at its disposal to monitor drug offenders, including access to arrest and conviction records*."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1261 (2019–2020 Reg. Sess.) July 10, 2019, p. 7, italics added.)

15.

Based on the foregoing, we conclude that pursuant to the changes in the law effected by Assembly Bill No. 1261, the narcotics registration requirement set forth in former Health and Safety Code sections 11590 and 11594 is now a nullity. (*People v. Collins*, *supra*, 21 Cal.3d at p. 213; *People v. Rossi*, *supra*, 18 Cal.3d at pp. 301–302.) Therefore, that portion of the trial court's oral pronouncement of judgment is stricken, and the trial court shall issue an amended abstract of judgment omitting the registration requirement.

## III.    Prior Prison Term Enhancement[*]

Under *Estrada* and in light of Senate Bill No. 136, defendant also seeks relief from the one-year prior prison term enhancement. The People concede his entitlement to relief on this claim.

Pursuant to section 667.5, subdivision (a), and subject to an exception not relevant here, trial courts are required to impose a three-year sentence for each prior, separate prison term served by the defendant for a violent felony where the current offense is also a violent felony, as defined in subdivision (c) of the statute. For other felonies, pursuant to former subdivision (b) of section 667.5, and subject to exceptions not relevant here, trial courts are required to impose an additional one-year term for each prior, separate prison term or county jail felony term. As amended by Senate Bill No. 136, subdivision (b) of section 667.5 limits imposition of the additional one-year term to each prior, separate prison term served for a conviction of a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).

We agree with the parties that Senate Bill No. 136 is retroactive under *Estrada* and, therefore, the amendment to section 667.5, subdivision (b), applies here. The trial court found the prior prison term enhancement allegation true and imposed a one-year term based on the enhancement. (§ 667.5, former subd. (b).) Defendant's 2016

---

\*      See footnote, *ante*, page 1.

16.

conviction for possession of a firearm by a felon is not a qualifying offense under section 667.5, subdivision (b), as amended. Therefore, we order the one-year prior prison term enhancement imposed by the trial court stricken.[11]

## IV. Dueñas Claim[*]

Finally, the trial court imposed the statutory minimum restitution fine of $300 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $300 under section 1202.45, subdivision (a), suspended; a total court operations assessment of $160 under section 1465.8; a total court facilities assessment of $120 under Government Code section 70373, subdivision (a)(1); a total crime lab fee of $100 under Health and Safety Code section 11372.5 with a total penalty assessment of $310; and a drug program fee of $100 under Health and Safety Code section 11372.7 with a penalty assessment of $310.[12, 13] Pursuant to the Court of Appeal's decision in *Dueñas*, *supra*, 30 Cal.App.5th

---

[11] Striking the prior prison term enhancement does not require remand for resentencing under the full resentencing rule where, as here, the trial court imposed the maximum sentence on count 1. (*People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.) However, as discussed in part IV. of the Discussion, it is appropriate to remand this matter to allow defendant an opportunity to raise the issue of his ability to pay the fines, fees, and assessments imposed.

[*] See footnote, *ante*, page 1.

[12] Although referred to as fees, the drug program fee imposed under Health and Safety Code section 11372.7 and the crime lab fee imposed under Health and Safety Code section 11372.5 are punishments rather than nonpunitive administrative fees. (*People v. Ruiz*, *supra*, 4 Cal.5th at p. 1122.)

[13] The penalty assessments referred to herein are comprised of the following seven assessments, surcharge, and penalties: "(1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)); (2) a 20 percent state surcharge (§ 1465.7); (3) a state court construction penalty of up to 50 percent (Gov. Code, § 70372); (4) a 70 percent additional penalty (Gov. Code, § 76000, subd. (a)(1)); (5) a 20 percent additional penalty if authorized by the county board of supervisors for emergency medical services (Gov. Code, § 76000.5, subd. (a)(1)); (6) a 10 percent additional penalty '"[f]or the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act"' (Gov. Code, § 76104.6, subd. (a)(1)); and (7) a 10 percent additional state-only penalty for the purpose of operating forensic laboratories under the same act (Gov. Code, § 76104.7)." (*People v. Hamed* (2013) 221 Cal.App.4th 928, 935; accord, *People v. Johnson* (2015) 234 Cal.App.4th 1432, 1457–1458.)

1157, which was issued after defendant was sentenced, he requests we stay the restitution fine and strike the fees and assessments until the prosecution proves he has the ability to pay.

For the reasons set forth in our recent decision in *Montes*, we reject the People's forfeiture argument and their merits-based argument. (*Montes*, *supra*, 59 Cal.App.5th at pp. 1117–1124.) On remand, the trial court shall allow defendant to raise the issue of his ability to pay the fines, fees, and court assessments, and to make a record on those issues. (*Id.* at p. 1122.)

## A. Forfeiture

As we recognized in *Montes*, "the failure to object in the trial court generally forfeits a claim on appeal and this principle is applicable to constitutional claims. (§ 1259; *People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.) There are exceptions to this general rule, however, and courts of review have the discretion to consider an issue notwithstanding the failure to object. (*People v. McCullough*, *supra*, at p. 593; *In re Sheena K.*, *supra*, at pp. 887–888, fn. 7.)" (*Montes*, *supra*, 59 Cal.App.5th at pp. 1117–1118.)

Relevant here, "[t]he restitution statute [expressly] provides that the inability to pay is not a 'compelling and extraordinary reason not to impose a restitution fine[]' (§ 1202.4, subd. (c)), but where … a trial court imposes a restitution fine *above* the statutory minimum, the court may consider the defendant's inability to pay in setting the fine (§ 1202.4, subd. (d))." (*Montes*, *supra*, 59 Cal.App.5th at p. 1118, italics added.) Because the trial court here imposed a minimum restitution fine of $300, defendant was precluded from objecting to the fine based on his inability to pay. (*Ibid.*, citing § 1202.4, subd. (c).) Likewise, the two crime lab fees of $50 each, imposed on counts 3 and 4 pursuant to Health and Safety Code section 11372.5, which included total attached penalty assessments of $310, were mandatory. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 870.)

18.

Additionally, "'[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.' (*People v. Welch* (1993) 5 Cal.4th 228, 237; accord, *People v. Gomez* (2018) 6 Cal.5th 243, 286–287; *People v. Black* (2007) 41 Cal.4th 799, 810.)" (*Montes*, *supra*, 59 Cal.App.5th at p. 1119.) "[T]he decision in *Dueñas* constituted a marked departure from existing law." (*Ibid.*) Given the statutory language of Penal Code section 1202.4 and Health and Safety Code section 11372.5, and the state of the substantive law prior to *Dueñas*, we decline to find that defendant forfeited his *Dueñas* claim.[14] (*Montes*, *supra*, at p. 1121; accord, *People v. Son* (2020) 49 Cal.App.5th 565, 596–597; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1031).

### B.  Remand Appropriate Due to Undeveloped Record

As explained in *Montes*, "[w]here, as [here], a defendant advances a claim premised on a significant and unforeseeable development in the law that occurred after sentencing and during the pendency of the appeal; there was no statutory right to object …; and the record is wholly undeveloped on the issue, a limited remand is appropriate to allow the parties to address the issue in the trial court in the first instance." (*Montes*, *supra*, 59 Cal.App.5th at p. 1122.) "Discretion to determine an appropriate fine amount rests with the trial court and the court is free to consider, among other factors, any money received by a defendant, be it in the form of prison wages or gifts. (*People v. Potts*

---

[14]     The $100 drug program fee imposed on count 4 included a statutory ability-to-pay component, but defendant did not object. (Health & Saf. Code, § 11372.7, subd. (b); *People v. Sharret*, *supra*, 191 Cal.Capp.4th at p. 864.) In *People v. Gutierrez*, the Court of Appeal concluded that the defendant's failure to object to the restitution fine forfeited his challenge to fines and fees in their entirety, explaining, "As a practical matter, if [the defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees." (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; accord, *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1033–1035; *People v. Taylor* (2019) 43 Cal.App.5th 390, 399–400; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.) We agree with this principle but do not apply it where, as here, the statutory right to object applied to a minority of the total fines, fees, and assessments imposed.

19.

(2019) 6 Cal.5th 1012, 1055–1056 [concluding trial court could lawfully impose $10,000 restitution fine despite condemned inmate's categorical ineligibility to earn prison wages and his receipt of only occasional small gifts of money from family, and rejecting argument 'that a fine is automatically invalid if a defendant is unable to pay it'].)" (*Ibid.*)

## DISPOSITION

The narcotics offender registration requirement imposed under former Health and Safety Code section 11590 is stricken; and the prior prison term enhancement imposed under section 667.5, former subdivision (b), is stricken. This matter is remanded for the limited purpose of allowing defendant to raise the issue of his ability to pay the fines, fees, and assessments imposed. The trial court shall forward an amended abstract of judgment to the appropriate authorities reflecting that the narcotics offender registration requirement and the prior prison term enhancement were stricken, and reflecting modification, if any, to the fines, fees, and assessments. In all other respects, the judgment is affirmed.


MEEHAN, Acting P.J.

WE CONCUR:


SNAUFFER, J.


DeSANTOS, J.

20.